UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JANE DOE,**<br>c/o 1825 K St NW., Suite 750<br>Washington, DC 20006<br><br>        Plaintiff<br><br>        v.<br><br>**Darden Restaraunts, Inc.,**<br>**d/b/a Olive Garden Italian Restaurant**<br>1000 Darden Center Drive,<br>Orlando, Florida 32837,<br><br>        Defendant. | Case No.: _____<br><br>Dated: May 9, 2024 |

## COMPLAINT

COMES NOW Plaintiff Jane Doe, by and through her undersigned counsel, and brings this civil action against Defendant Darden Restaurants d/b/a Olive Garden Italian Restaurant, ("Defendant" or "Olive Garden") as follows:

### NATURE OF THE CASE

1. On or about August 1, 2022, Plaintiff began working for Defendant Olive Garden as a production cook and line cook at the Nottingham (Baltimore), Maryland location within the White Marsh Mall.

2. Defendant Darden Restaurants is a full-service dining company, operating over 1800 locations of chain restaurants, including Olive Garden.

3. From the time of her hiring until Plaintiff was forced to resign from Olive Garden, she was subjected to continuous sexual harassment by a coworker, Mark Killinger.

4. The harassment includes acts that constitute battery, including Mr. Killinger grinding his crotch area against Plaintiff's behind and a physical assault, despite Plaintiff's multiple

1

complaints to her managers at the Nottingham location.

5. Plaintiff brings this action alleging violations of Title VII of the Civil Rights Act of 1964, the Maryland Fair Employment Practices Act, and the Baltimore County Code.

## VENUE AND JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

8. Plaintiff resides in Maryland, and formerly worked for Defendant.

9. Defendant is a Florida corporation with numerous Olive Garden locations in Maryland.

10. At all relevant times herein, Plaintiff was employed by Defendant, and was Defendants' "employee" within the meaning and subject to the protections of Title VII of the Civil Rights Act, Maryland Fair Employment Practices Act, and the Baltimore County Code.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff exhausted her administrative remedies by timely filing a charge of discrimination (Charge No. 531-2023-04253) with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 26, 2023.

12. On February 9, 2024, Plaintiff received a Notice of Right to Sue from the EEOC Baltimore Field Office. Plaintiff files this Complaint within 90 days of receiving the Notice of Right to Sue.

## STATEMENT OF FACTS

13. Plaintiff began working at Olive Garden on August 1, 2022, as a production cook and line cook.

14. At the beginning of Plaintiff's tenure, her coworker, Mark Killinger was friendly to her.

But within one week, he began making unwanted physical contact with Plaintiff.

15. Each shift, without fail, Mr. Killinger consistently rubbed and pressed his crotch against Plaintiff's behind when he walked behind her.

16. This happened several times per shift that they worked together – sometimes more than 20 times in a single 8-hour shift.

17. Anytime Plaintiff bent over to get ice from the machine or to perform other regular duties assigned to her, Mr. Killinger found a way to position himself directly behind her and press his crotch up against her behind.

18. Even when there were multiple routes for Mr. Killinger to get to his workstation without crowding Plaintiff, he always took a route that led him past Plaintiff and then rubbed himself against her.

19. Due to the nature of the restaurant kitchen set up, Mr. Killinger passed Plaintiff on average about 20 times in an eight-hour shift.

20. Plaintiff felt violated and feared for her safety every day. Mr. Killinger's disgusting behavior has Plaintiff constantly on edge and humiliated while at work. She became vigilant to avoid him and check her surroundings at all times for fear that he would again grind his pelvis against her.

***Plaintiff begins reporting Mr. Killinger's behavior to Olive Garden management.***

21. Mr. Killinger's behavior has persisted despite Plaintiff's reports to General Manager Parker Rosenau in early October 2022.

22. Not only did Mr. Rosenau do nothing to stop Mr. Killinger's harassment of Plaintiff, Mr. Rosenau belittled Plaintiff, telling her that she should not "miss out on a husband." Mr. Killinger's harassment persisted.

3

23. Dismayed by Mr. Rosenau's response, Plaintiff reported the harassment to another manager, Christine [last name unknown], in mid-October 2022.

24. Upon information and belief, Christine did nothing more than speak to Mr. Rosenau and Mr. Killinger about Mr. Killinger's inappropriate behavior.

25. Because no real action was taken, Mr. Killinger continued his incessant rubbing and grinding of his pelvis against Plaintiff.

### *Mr. Killinger's harassment continues to escalate.*

26. Emboldened by the company's tolerance of his vulgar behavior, Mr. Killinger's harassment escalated on November 30, 2022, when he physically held a door against Plaintiff, wedging her up against a towel rack.

27. Mr. Killinger watched and waited for Plaintiff to approach the restroom, then went into the restroom with the door half open.

28. When Mr. Killinger saw Plaintiff approach the towel rack, he shut the restroom door giving Plaintiff space to retrieve what she needed from the towel rack.

29. Seconds later, knowing that Plaintiff was between the towel rack and the restroom door, Mr. Killinger flung the restroom door open into Plaintiff's back, pinning her against the towel rack.

30. Plaintiff freed herself from behind the restroom door, she confronted Mr. Killinger and told him he needs to leave her alone.

31. Another manager, Julia Ellis, encouraged Plaintiff to write up a report summarizing the events. At that time, Ms. Ellis expressed to Plaintiff that she was under the impression Mr. Rosenau had already addressed the situation.

32. Later that day, Plaintiff began to feel excruciating pain in her upper back from being pinned

against the towel rack.

33. She was so upset about the escalating harassment and Olive Garden's refusal to correct the behavior that she decided to speak with the police.

### *Olive Garden refuses to take action after Plaintiff's reports of sexual harassment and assault.*

34. On December 3, 2022, Mr. Rosenau called Plaintiff and told her that he "spoke with" Mr. Killinger.

35. Mr. Rosenau said that "Mark [Killinger] knows not to do it again" and that Olive Garden would not be terminating Mr. Killinger's employment.

36. On December 7, 2022, Mr. Rosenau's supervisor, Brandy, called Plaintiff. Brandy stated that she also "spoke with" Mr. Killinger but would not say if he received any discipline or consequence for his actions.

37. Olive Garden continued to schedule Plaintiff and Mr. Killinger for the same shifts until Plaintiff was forced to leave the position in or about March 2023.

38. Before resigning from her position, Plaintiff was in a constant state of fear at work.

39. When Plaintiff suggested to Olive Garden management to schedule her working hours when Mr. Killinger was not working, Ms. Ellis told her, "Just don't think about it."

40. After the December 2022 holidays, Mr. Killinger continued to make Plaintiff uncomfortable and made completing her job duties more difficult.

41. Mr. Killinger routinely left work early without finishing his dishwashing duties. When Mr. Killinger did not wash the trays, Plaintiff was unable to load up the trays with pasta and bread she made on Saturdays.

42. Management also reduced Plaintiff's hours after she complained of Mr. Killinger's sexual harassment, and management began training new employees on duties that were previously

5

Plaintiff's responsibility.

43. Plaintiff used to regularly work Monday through Thursday, occasionally picking up some weekend shifts, but her hours were drastically decreased by Spring 2023, and she was only given shifts from Monday through Wednesday.

44. Plaintiff had no choice but to resign from her position in March 2023.

## COUNT I

*Sex discrimination/sexual harassment in violation of Title VII of the Civil Rights Act*

45. Plaintiff adopts by reference each of the allegations in the paragraphs above.

46. At all pertinent times, Defendant was an employer under Title VII of the Civil Rights Act of 1964.

47. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964.

48. Defendant discriminated against Plaintiff and subjected her to disparate treatment due to her sex because management was aware of the sexual harassment being perpetrated by its employee yet did nothing to address it.

49. By and through its conduct, Defendant violated Title VII of the Civil Rights Act of 1964.

## COUNT II

*Hostile Work Environment & Harassment: Retaliation for reporting sex discrimination/sexual harassment in violation of Title VII of the Civil Rights Act*

50. Plaintiff adopts by reference each of the allegations in the paragraphs above.

51. At all pertinent times, Defendant was an employer under Title VII of the Civil Rights Act of 1964.

52. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964.

53. Defendant subjected Plaintiff to a hostile work environment because of and sex and in retaliation for engaging in protected activities when reporting the sexual harassment, when: Defendant allowed Mr. Killinger to continue making Plaintiff uncomfortable after reporting the sexual harassment, allowing him to routinely leave work early and force Plaintiff to either perform his duties, or make it impossible for Plaintiff to perform her own duties; and when Defendant management reduced Plaintiff's working hours after she complained of Mr. Killinger's sexual harassment, and management began training new employees on duties that were previously Plaintiff's responsibility. Plaintiff used to regularly work Monday through Thursday, occasionally picking up some weekend shifts, but her hours were drastically decreased by Spring 2023, and she was only given shifts from Monday through Wednesday.

54. Title VII of the Civil Rights Act of 1964 prohibits harassment based on a protected characteristic. Defendant subjected Plaintiff to a hostile work environment based on sexual harassment in connection to her sex because management was aware of the sexual harassment being perpetrated by its employee yet did nothing to address it.

55. Sexual harassment is conduct of a sexual nature that alters an individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment.

56. Defendant permitted the hostile work environment to continue and increase in severity such that Plaintiff was unable to tolerate the hostility and was constructively discharged.

57. Defendants knowingly and intentionally engaged in unlawful discrimination and permitted Plaintiff to be sexually harassed based on her sex.

58. By and through its conduct, Defendant violated Title VII of the Civil Rights Act.

## COUNT III

*Sex discrimination/sexual harassment in violation of the Maryland Fair Employment Practices Act*

59. Plaintiff adopts by reference each of the allegations in the paragraphs above.

60. At all pertinent times, Defendant was an employer under the Maryland Fair Employment Practices Act ("FEPA.")

61. At all pertinent times, Plaintiff was an employee entitled to protection under FEPA.

62. Defendant discriminated against Plaintiff and subjected her to disparate treatment due to her sex because management was aware of the sexual harassment being perpetrated by its employee yet did nothing to address it.

63. By and through its conduct, Defendant violated FEPA.

## COUNT IV

*Hostile Work Environment & Harassment: Retaliation for reporting sex discrimination/sexual harassment in violation of the Maryland Fair Employment Practices Act*

64. Plaintiff adopts by reference each of the allegations in the paragraphs above.

65. At all pertinent times, Defendant was an employer under FEPA.

66. At all pertinent times, Plaintiff was an employee entitled to protection under FEPA.

67. Defendant subjected Plaintiff to a hostile work environment because of and sex and in retaliation for engaging in protected activities when reporting the sexual harassment, when: Defendant allowed Mr. Killinger to continue making Plaintiff uncomfortable after reporting the sexual harassment, allowing him to routinely leave work early and force Plaintiff to either perform his duties, or make it impossible for Plaintiff to perform her own duties; and when Defendant management reduced Plaintiff's working hours after she complained of Mr. Killinger's sexual harassment, and management began training new

employees on duties that were previously Plaintiff's responsibility. Plaintiff used to regularly work Monday through Thursday, occasionally picking up some weekend shifts, but her hours were drastically decreased by Spring 2023, and she was only given shifts from Monday through Wednesday.

68. FEPA prohibits harassment based on a protected characteristic. Defendant subjected Plaintiff to a hostile work environment based on sexual harassment in connection to her sex because management was aware of the sexual harassment being perpetrated by its employee yet did nothing to address it.

69. Sexual harassment is conduct of a sexual nature that alters an individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment.

70. Defendant permitted the hostile work environment to continue and increase in severity such that Plaintiff was unable to tolerate the hostility and was constructively discharged.

71. Defendants knowingly and intentionally engaged in unlawful discrimination and permitted Plaintiff to be sexually harassed based on her sex.

72. By and through its conduct, Defendant violated FEPA.

## COUNT V

***Sex discrimination/sexual harassment in violation of Baltimore County Code (Article 3, Title 3, Subtitle 11 of the Baltimore County Code 2003)***

73. Plaintiff adopts by reference each of the allegations in the paragraphs above.

74. At all pertinent times, Defendant was an employer under the Baltimore County Code.

75. At all pertinent times, Plaintiff was an employee entitled to protection under the Baltimore County Code.

76. Defendant discriminated against Plaintiff and subjected her to disparate treatment due to

her sex because management was aware of the sexual harassment being perpetrated by its employee yet did nothing to address it.

77. By and through its conduct, Defendant violated the Baltimore County Code.

## COUNT VI

*Hostile Work Environment & Harassment: Retaliation for reporting sex discrimination/sexual harassment in violation of Baltimore County Code (Article 3, Title 3, Subtitle 11 of the Baltimore County Code 2003)*

78. Plaintiff adopts by reference each of the allegations in the paragraphs above.

79. At all pertinent times, Defendant was an employer under the Baltimore County Code.

80. At all pertinent times, Plaintiff was an employee entitled to protection under the Baltimore County Code.

81. Defendant subjected Plaintiff to a hostile work environment because of and sex and in retaliation for engaging in protected activities when reporting the sexual harassment, when: Defendant allowed Mr. Killinger to continue making Plaintiff uncomfortable after reporting the sexual harassment, allowing him to routinely leave work early and force Plaintiff to either perform his duties, or make it impossible for Plaintiff to perform her own duties; and when Defendant management reduced Plaintiff's working hours after she complained of Mr. Killinger's sexual harassment, and management began training new employees on duties that were previously Plaintiff's responsibility. Plaintiff used to regularly work Monday through Thursday, occasionally picking up some weekend shifts, but her hours were drastically decreased by Spring 2023, and she was only given shifts from Monday through Wednesday.

82. The Baltimore County Code prohibits harassment based on a protected characteristic. Defendant subjected Plaintiff to a hostile work environment based on sexual harassment in

connection to her sex because management was aware of the sexual harassment being perpetrated by its employee yet did nothing to address it.

83. Sexual harassment is conduct of a sexual nature that alters an individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment.

84. Defendant permitted the hostile work environment to continue and increase in severity such that Plaintiff was unable to tolerate the hostility and was constructively discharged.

85. Defendants knowingly and intentionally engaged in unlawful discrimination and permitted Plaintiff to be sexually harassed based on her sex.

86. By and through its conduct, Defendant violated the Baltimore County Code.

## JURY TRIAL DEMAND

87. Plaintiff demands a jury trial on all claims against Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court enter judgment against Defendants on all Counts, and award Plaintiff lost wages and benefits; pecuniary damages; compensatory damages; punitive damages; liquidated damages in an amount equal to Plaintiff's lost wages, benefits, and other compensation; liquidated damages in the amount of Plaintiff's pecuniary damages; an amount equal to the tax on any award; costs; attorney's fees; and any such other relief as the Court deems just and proper.

Respectfully submitted,

Alan Lescht and Associates, P.C.

By: /s/ *Tamara Slater*
Tamara Slater
1825 K Street, N.W.
Suite 750 Washington, D.C. 20006

11

Tel: (202) 315-1732
Fax: (202) 463-6067
tamara.slater@leschtlaw.com
*Counsel for Plaintiff*

**Rule 1-313 Certification**

I certify that I am admitted to practice law in the state of Maryland.

/s/ Tamara Slater
Tamara Slater
