IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE, | * |
| Plaintiff, | * |
| v. | * Civ. No. JKB-24-1368 |
| GRMI, Inc., | * |
| Defendant. | * |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM**

Before the Court is Defendant GRMI Inc.'s Motion to Partially Dismiss Plaintiff's Complaint. (ECF No. 14.) Specifically, GRMI moves to dismiss Plaintiff's claims pursuant to the Baltimore County Code and Plaintiff's claims that she was constructively discharged. (*Id.* at 1.) Because Plaintiffs does not oppose GRMI's Motion to dismiss the Baltimore County Code claims (ECF No. 17 at 9), the Court need not address this issue further, GRMI's Motion will be granted, and those claims will be dismissed. Insofar as GRMI moves to dismiss Plaintiff's constructive discharge claims, the Motion will also be granted, for the reasons stated below.

**I.    BACKGROUND[1]**

Plaintiff brings suit against GRMI as the owner of the Olive Garden Italian Restaurant at the White Marsh mall, alleging that "she was subjected to continuous sexual harassment by a coworker" while working in Olive Garden's kitchen. (ECF No. 18-1 ¶¶ 1–4.) The alleged harasser

---

[1] At this stage, the Court accepts as true the "well-pleaded allegations of the complaint" and draws "all reasonable inferences therefrom in favor of the plaintiff." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (citing *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997)). Plaintiff's allegations are recounted with these principles in mind.

"consistently rubbed and pressed his crotch against Plaintiff's behind when he walked behind her." (*Id.* ¶ 15.) This happened "several times per shift," at times "more than 20 times in a single 8-hour shift." (*Id.* ¶ 16.) Plaintiff was "constantly on edge and humiliated while at work." (*Id.* ¶ 20.) She "felt violated and feared for her safety every day" and "became vigilant" to try to avoid the harasser. (*Id.*)

In early October 2022, Plaintiff reported the harassment to a general manager. (*Id.* ¶ 21.) He, however, did "nothing" to stop the harassment, which continued, and instead belittled Plaintiff. (*Id.* ¶ 22.) In mid-October 2022, Plaintiff "reported the harassment to another manager" and that manager "did nothing more than speak to" the general manager and the harasser about the inappropriate behavior. (*Id.* ¶ 23–24.) "Because no real action was taken" the harasser "continued his incessant rubbing and grinding of his pelvis against Plaintiff." (*Id.* ¶ 25.)

On November 30, 2022, "[e]mboldened by the company's tolerance of his vulgar behavior," the harassment escalated when the harasser "physically held a door against Plaintiff, wedging her up against a towel rack." (*Id.* ¶ 26.) This caused "excruciating pain in her upper back." (*Id.* ¶ 32.) A third manager, who was under the impression that a different manager had already handled the situation, encouraged Plaintiff "to write up a report summarizing the events." (*Id.* ¶ 31.)

On December 3, 2022, the general manager and his supervisor told Plaintiff that they had spoken with the harasser and that he "[knew] not to do it again" but "would not say if he received any discipline or consequence for his actions." (*Id.* ¶¶ 34–36.) Defendant continued to schedule Plaintiff with her harasser, and "Plaintiff was in a constant state of fear at work." (*Id.* ¶¶ 37–38.) Her request to be scheduled when the alleged harasser was not working was denied. (*See id.* ¶ 39.) In 2023, the harasser "continued to make Plaintiff uncomfortable and made completing her job

2

duties more difficult." (*Id.* ¶ 40.) He would leave work early and "without finishing his dishwashing duties," which prevented Plaintiff from finishing her tasks. (*Id.* ¶ 41.)

After she complained about the sexual harassment, management reduced Plaintiff's hours; she used to work regularly from Monday through Thursday and occasionally on weekends, but her "hours were drastically decreased by Spring 2023" and eventually "she was only given shifts from Monday through Wednesday." (*Id.* ¶¶ 42–44.) She "had no choice but to resign from her position in March 2023." (*Id.* ¶ 44.)

Plaintiff alleges that "Defendant discriminated against Plaintiff and subjected her to disparate treatment due to her sex because management was aware of the sexual harassment being perpetrated by its employee yet did nothing to address it" in violation of Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act ("MFEPA"). (*Id.* ¶¶ 48, 62.) She further alleges that "Defendant subjected Plaintiff to a hostile work environment because of sex and in retaliation for engaging in protected activities when reporting the sexual harassment" in violation of Title VII and MFEPA. (*Id.* ¶¶ 53, 67.) Lastly, as relevant here, Plaintiff alleges that "Defendant permitted the hostile work environment to continue and increase in severity such that Plaintiff was unable to tolerate the hostility and was constructively discharged." (*Id.* ¶¶ 56, 70.) Only the sufficiency of the constructive discharge claims is at issue here. (ECF No. 14 at 1–2.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint

in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Legal conclusions, however, are entitled to no such deference and are not accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the complaint offers mere "labels and conclusions" and "naked assertions devoid of further factual enhancement" it will not suffice. *Id.* (quotations and alterations omitted).

### B.   Constructive Discharge

To state a claim for constructive discharge, a plaintiff must allege facts showing "objective intolerability," meaning "circumstances of discrimination so intolerable that a reasonable person would resign." *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 235 (4th Cir. 2022) (quotations omitted) (noting that the Supreme Court had removed any requirement that the employer had acted deliberately, i.e. with subjective intent to cause the employee to resign).[2] It is not enough to show that "a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision." *Gaines v. Balt. Police Dep't*, 657 F.Supp.3d 708, 741 (D. Md. 2023) (quoting *Perkins v. International Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019)). "[I]ntolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign," i.e. "would have had *no choice* but to resign." *Id.* (quotation omitted). To allege constructive discharge, there must be "a

---

[2] The Parties agree that the standard for constructive discharge under MFEPA is substantially the same as under Title VII. (ECF No. 14-1 at 6; ECF No. 17 at 8–9.)

4

greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id.* (quotation omitted.) "Intolerability is a high bar." *Id.* "[D]ifficult or unpleasant working conditions . . . without more, are not so intolerable as to compel a reasonable person to resign." *Perkins*, 936 F.3d at 212.

### III. ANALYSIS

While the conduct she alleges is opprobrious, Plaintiff has failed to allege that the circumstances at the time of her resignation were sufficiently objectively intolerable to state a constructive discharge claim. While the repeated and continuous sexual harassment she describes, especially in combination with management's prolonged knowledge and inaction, might otherwise be sufficiently intolerable, based on Plaintiff's allegations, the harassment stopped in early December 2022. (*See* ECF No. 18-1 ¶¶ 34–35.) Plaintiff resigned in March 2023, approximately three months later, after a prolonged period without sexual harassment. (*See id.* ¶ 44.) The frequency and continuity of the offensive conduct are relevant to whether the circumstances were intolerable. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) ("The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability."). Here, where there had been no harassment for months before she resigned, the circumstances at the time of her resignation may have been "difficult or unpleasant" but were not "so intolerable as to compel a reasonable person to resign." *See Perkins*, 936 F.3d at 212; *see also Hodge v. Walrus Oyster Ale House*, Civ No. TDC-18-3845, 2019 WL 6069114, *8 (D. Md. Nov. 15, 2019) (finding insufficiently intolerable circumstances for a restaurant employee where the plaintiff received unfair table assignments, was not promoted, had their hours reduced, and another employee threw away the plaintiff's food and drinks and followed them around the restaurant). During the months

5

immediately preceding her resignation, the harasser's only alleged action was failing to finish his dishwashing duties, making it difficult for Plaintiff to finish preparing food she had made. (ECF No. 18-1 ¶ 41.) This juvenile behavior may have made Plaintiff's working circumstances unpleasant but, even combined with the uncomfortable presence of the alleged harasser and a shift reduction, it is not enough to create circumstances that would give a reasonable person no choice but to resign.

The Plaintiff, who does not argue that she alleged that the sexual harassment continued past December 2022, has not presented the Court with any case law supporting her position. She cites *Lopez v. BMA Corp.*, (ECF No. 17 at 3–4), but in that case, the "harassment continued unabated." Civ. No. DKC-13-2406, 2013 WL 6844361, at *12 (D. Md. Dec. 24, 2013). Similarly, there is no suggestion that the harassment stopped in *Whitten v. Fred's, Inc.*, making that case similarly inapposite. 601 F.3d 231, 249 (4th Cir. 2010). Accordingly, because she has failed to allege objectively intolerable circumstances preceding her resignation, Plaintiff's constructive discharge claims will be dismissed.

As discussed above, only Plaintiff's claims that she was constructively discharged are disputed here, and only those claims (and the undisputed Baltimore County Code claims) will be dismissed. Constructive discharge is an overshoot in this circumstance, where the harassment apparently stopped well in advance of resignation. But Plaintiff has amply alleged facts, at this stage of litigation, supporting her sex discrimination/sexual harassment and retaliation claims. Those claims will remain undisturbed by this Court's ruling on Defendant's Motion of Dismiss and this case will proceed to discovery.

## IV. CONCLUSION

For the reasons stated herein, GRMI's Motion will be granted. Plaintiff's claims pursuant to the Baltimore County Code and constructive discharge claims will be dismissed. A separate Order will issue.

DATED this **22** day of July, 2024.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
United States District Judge